**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | No. CR-95-320-PHX-RCB |
| ) | |
| vs. ) | O R D E R |
| ) | |
| Castulo Soto-Valdez, ) | |
| ) | |
| Defendant. ) | |

Defendant *pro se*, Castulo Soto-Valdez, is serving a 360 month sentence for a conviction, after a jury trial, for conspiring to distribute and possess with intent to distribute methamphetamine. Currently pending before the court is his "request to be provided . . . access" to the "entire preexisting case file, including all records and transcripts" in this case. Doc. (1310) at 1 and 2. Preliminarily, defendant stresses that he is "not seeking a free copy of the records and transcripts[.]" Id. at 1. Instead, he is "seeking to review" the "already existing records and transcripts" in this court's file. Id. Because he is incarcerated in Michigan, defendant requests that the Clerk of the Court "retrieve" the

1  court's "entire preexisting . . . file[,]" and send it via
2  "Certified Mail" to the Warden there.  Id. at 2.  At odds with his
3  earlier statement that he is not seeking a "free copy" of the
4  existing court file, later in his request defendant states that he
5  wants to be "allowed under supervision . . . to review, read *and*
6  *photocopy*" parts of that file which he "deems necessary" to prepare
7  a "motion for collateral relief."  Id. at 3 (emphasis added).
8  Finally, defendant requests that he be provided access to the
9  court's file for "no less than . . . 45 days[,]" after which time
10 the Warden "shall return the records" via "Certified Mail[.]"  Id.
11      In his request, defendant is not seeking *in forma pauperis*
12 status as 28 U.S.C. § 1915 allows.  Defendant does claim to be
13 indigent and unable to "obtain access" to the court's file due to
14 his incarceration.  Id. at 1, ¶ 3.  Defendant further asserts that
15 his "trial lawyer does not have a copy of the records and
16 transcripts [in] this case."  Id. at 1, ¶ 4.  Similarly, defendant
17 claims that his former lawyer did not provide him with a copy of
18 those items.  Id. at 1-2, ¶ 4.

### *Procedural Background*

20     To place this request in context, a brief review of
21 defendant's litigation history is necessary.  Following his
22 conviction and sentence, defendant appealed and the Ninth Circuit
23 affirmed.  United States v. Soto-Valdez, 191 F.3d 462 (9th Cir.
24 1999).  Just a few days prior to the issuance of that decision,
25 defendant filed a separate action to vacate/set aside his sentence
26 pursuant to 28 U.S.C. § 2255, Soto-Valdez v. Adams, 99-CV-01591
27 (doc. 1145).  After denying that section 2255 motion, this court
28 entered judgment against defendant and dismissed the action (doc.

1211).  Defendant promptly filed a notice of appeal with the Ninth Circuit (doc. 1212).  Finding probable cause existed for defendant's appeal, this court allowed defendant to proceed *in forma pauperis* for appeal purposes only (doc. 1213).  The court also issued a certificate of appealability solely as to the ineffective assistance of counsel claim, finding that defendant had made a substantial showing of the denial of a constitutional right in that regard.  Id.  Ultimately, the Ninth Circuit dismissed that appeal based on defendant's failure to file the opening brief. Doc. 1224.

Defendant acknowledges that the present request "is not a collateral attack upon [his] conviction or sentence." Id. at 1. Defendant asserts though that he needs access to the court's file to "perfect[] . . . a collateral attack raising an 'actual innocen[ce]' claim[,]" despite the fact that he has already filed a section 2255 motion which was unsuccessful.[1]  Id. at 2, ¶ 5.

### *Discussion*

Defendant Soto-Valdez does not indicate the statutory basis for his request to access the court's pre-existing file. Potentially, two statutes are applicable.  The first is 28 U.S.C. § 753(f).  Under that statute, a litigant who has been granted *in forma pauperis* ("IFP") status pursuant to section 1915 may file a motion to obtain a transcript at the government's expense upon a showing that his suit is "not frivolous and that the transcript is

---

[1] The court observes, without deciding, that in light of the foregoing, it may be that any subsequent habeas corpus petition which defendant files may be deemed a "second or successive" petition which the Anti-Terrorism and Effective Death Penalty Act generally prohibits.  See 28 U.S.C. § 2244(b)(1) (West 2006).

1  needed to decide the issue presented by the suit[.]" 28 U.S.C.
2  § 753(f) (West 2006).
3      The second arguably applicable statute is 28 U.S.C. § 753(b).
4  In relevant part that statute requires:

> The original notes or other original records and the copy of the transcript in the office of the clerk shall be open during office hours to inspection by any person without charge.

28 U.S.C. § 753(b) (West 2006).  Based upon this statute, the Seventh Circuit in Rush v. United States, 559 F.2d 455 (7th Cir. 1977), held that incarcerated petitioners who had no counsel and who were "collaterally challenging [their] underlying criminal convictions" had "an *absolute personal right* to reasonable access to the pre-existing files and records of their underlying case." Rush, 559 F.2d at 458 (emphasis added).

"[U]nderscoring that the sought-after transcripts already exist[ed][,]" the Rush Court reasoned that "[d]enying access to court files to prisoners, given the statutory inspection rights granted by 28 U.S.C. § 753(b), works an invidious discrimination" in violation of the due process clause of the Fifth Amendment. Rush, 559 F.2d at 459 (citation omitted).  Denying unrepresented prisoners access to court files is not "constitutionally harmless," the Seventh Circuit further explained, "[b]ecause a privately retained counsel, under similar circumstances, when his client's resources are not unlimited, would (most assuredly study the record) for his client[.]" Id. (internal quotation marks and citation omitted).  Thus, "relying in part upon its supervisory powers," the Rush Court "held that upon a proper application to inspect a preexisting court record, the district court should mail

-4-

the record to a prisoner 'providing appropriate safeguards to maintain the record's integrity[.]'" <u>United States ex rel. Davidson v. Wilkinson</u>, 618 F.2d 1215, 1217 (7th Cir. 1980) (quoting <u>Rush</u>, 559 F.2d at 459 (footnote omitted). Indeed, the <u>Rush</u> Court sweepingly directed that "future requests for the pre-existing record in [an] underlying criminal proceeding should be *granted as of right by the district courts* to prisoners seeking to use the record to prepare a collateral attack on their conviction." <u>Rush</u>, 559 F.2d at 459-460 (emphasis added).

In so holding, the <u>Rush</u> Court rejected the view that petitioners' *pro se* motion for verbatim transcripts at the government's expense was a section 753(f) request. According to the Seventh Circuit, petitioners' motion would not be construed as such because "no transcript fees would accrue because the 'records and files' sought [in] the underlying criminal case were already in existence." <u>Rush</u>, 559 F.2d at 458. The Seventh Circuit further reasoned that because "the district court could frank the record through the mails to one of the petitioners, no 'money appropriated for (the) purposes (of providing transcripts)' need be expended in providing the *original record* to [them][.]" <u>Id.</u> (emphasis added) (footnotes omitted). In light of the foregoing, the <u>Rush</u> Court vacated the district court's denial of petitioner's motion insofar as it was premised upon section 753(f).

Pointedly noting that "[n]o other circuits have adopted the Seventh Circuit position [in <u>Rush</u>][,]" the Eighth Circuit in <u>United States v. Losing</u>, 601 F.2d 351 (8th Cir. 1979), declined to follow <u>Rush</u>. <u>Id.</u> at 353 (citation omitted). Rather, after <u>Losing</u>, the rule in the Eighth Circuit is, much like a transcript request

-5-

1 pursuant to section 753(f), that "under section 753(b), access to
2 materials such as a transcript is not constitutionally required
3 until after judicial certification that access is required to
4 decide issues presented in a pending, non-frivolous case." <u>Chapman</u>
5 <u>v. United States</u>, 55 F.3d 390, 391 (8th Cir. 1995) (citing <u>United</u>
6 <u>States v. Losing</u>, 601 F.2d 351, 353 (8th Cir. 1979)).

7     Likewise, in <u>Sistrunk v. United States</u>, 992 F.2d 258 (10th
8 Cir. 1993), the Tenth Circuit also declined to follow <u>Rush</u>.  The
9 <u>Sistrunk</u> Court began its analysis with <u>United States v. MacCollom</u>,
10 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976)).  In <u>MacCollom</u>,
11 the Supreme Court held that "an indigent defendant's right of equal
12 access to procedures for review of his conviction was satisfied at
13 the collateral relief stage by affording a defendant a free
14 transcript upon a showing of a particularized need for the
15 transcript as . . . § 753" requires.  <u>Id.</u> at 259 (citations
16 omitted).  Recognizing that "some courts have held that the actual
17 filing of a habeas petition is a necessary prerequisite[]" to
18 complying with section 753(f), there was no need to resolve that
19 issue in <u>Sistrunk</u>.  <u>Id.</u> (citations omitted).  Timing was not an
20 issue there because the *pro se* prisoner did not satisfy section
21 753(f)'s requirements in that he did not provide any factual
22 allegations to support his ineffective assistance of counsel claim.
23 Consequently, the <u>Sistrunk</u> Court held that the prisoner was not
24 entitled to a free copy of his transcript under that statute.  <u>Id.</u>
25     The fact that in <u>Sistrunk</u> the prisoner was requesting an
26 existing transcript did not "compel[] a different conclusion."  <u>Id.</u>
27 "[D]isagree[ing]" with the Seventh Circuit that a "broad[] reading
28 of § 753(b) was required to avoid constitutional problems," the

Sistrunk Court emphasized that in MacCollom the Supreme Court "explicitly stated that a defendant's constitutional right of equal access to the courts was satisfied by providing a defendant with a copy of his transcript on direct appeal and did not require an unconditional right to a transcript in collateral proceedings." Id. at 260 (citing MacCollom, 426 U.S. at 326, 96 S.Ct. at 2092).

Moreover, in Sistrunk the Tenth Circuit astutely commented, "even when furnishing pre-existing transcripts to prisoners[,]" the United States still incurs costs. Id. (citation and footnote omitted). Acknowledging that those "costs may be less than those required to be paid where a transcript has not yet been prepared," the Tenth Circuit observed that "§ 753(f) specifies no minimum dollar amount as a prerequisite to its applicability." Id. The Court further noted "that the fees referred to in § 753(f) include copying and mailing costs." Id. at 260 n.5. It would be an "absurd result[,]" the Sistrunk Court found, if pursuant to that statute, "the United States could prepare transcripts for indigent defendants but could not subsequently copy or mail them to the defendant once they were prepared." Id. The Court posited that the "clerk's office could . . . eliminate copying costs by sending original transcripts to prisoners[,]" which is what the Seventh Circuit seems to require in Losing. See id. As the Sistrunk Court astutely observed, however, that would be problematic. Not only are there "concerns about preserving the transcripts," but the fact remains that § 753(b) requires that the clerk's records be available for public inspection." Id. The public's inspection rights could be greatly hampered if original court files were routinely sent to correctional facilities for prisoners' review. s

-7-

For all of these reasons, "[c]ontrary to the Seventh Circuit[]" in Rush, the Tenth Circuit in Sistrunk held "that § 753(f) is the *exclusive provision* governing requests by indigent prisoners for free transcripts, whether or not the transcripts already exist." Id. at 260 (emphasis added). Moreover, "before a defendant is entitled to a free transcript" pursuant to that statute, "he must make the particularized showing required" thereunder. Id.

Based upon Rush and its limited progeny within the Seventh Circuit, defendant Soto-Valdez contends that he is entitled to review the court's file in his criminal case and have photocopies of "relevant parts" provided free of charge to "prep[a]r[e] . . . his motion for collateral relief."[2] Mot. (doc. 1310) at 3. The court disagrees.

The Ninth Circuit has not yet had occasion to address the issue of whether § 753(b) or 753(f) governs a request such as defendant's. The Eighth Circuit in Losing, and the Tenth Circuit in Sistrunk have adopted what, in this court's view, is the sounder approach – from a legal as well as from a pragmatic standpoint. As discussed above, those courts found no constitutional harm in requiring a prisoner to comply with section 753(f) prior to being given access to even a pre-existing court file.

Broadly construing section 753(b)'s inspection rights, as the Seventh Circuit has, to require provision to prisoners of the "original record" would be unduly burdensome and costly. Provision

---

[2] Evidently because the United States is not being asked to incur any expenses in connection with defendant's request, it did not file a response hereto.

of the "original record" could jeopardize the inspection rights of others under section 753(b), not to mention potentially compromising the integrity of the original court record.  Granting prisoners access to the original record also would be complicated by multi-defendant cases where several prisoners are simultaneously, or nearly so, demanding access to the same original record.

Avoiding the difficulties inherent in providing such access to prisoners would, despite the Seventh Circuit's contrary assumption, result in additional cost to the United States.  Mailing aside, copying costs would be incurred because it would be extremely difficult to maintain the integrity of the court's file if originals were routinely sent to correctional facilities.  All of these reasons convince the court that an incarcerated individual, such as Mr. Soto-Valdez, must "make the particularized showing required by [28 U.S.C. § 753(f)]," before he will be entitled to obtain access to even a pre-existing court file.  See Sistrunk, 992 F.2d at 260.  More specifically, such litigants must show that their suit is "not frivolous and that the transcript is needed to decide the issue presented by the suit[.]"  28 U.S.C. § 753(f).  Section 753(b) does not provide such litigants with a separate, independent right of access to the court's original file.

Having found that section 753(f) rather than section 753(b) governs defendant's request herein, the court must next consider whether he has complied with the former statute.  As a prerequisite to qualifying for a free transcript under that statute, a litigant must be certified to proceed IFP under section 1915(a).  On this sparse record, defendant Soto-Valdez does not meet the economic

eligibility requirement of that statute.  There is no "affidavit that includes a statement of all assets [he] possesses [showing] that the person is unable to pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1) (West 2006).  Nor has defendant Soto-Valdez provided a certified copy of his prisoner trust fund account for the preceding six months, as section 1915(a)(2) mandates.

In addition, there is no showing on this record that the actual innocence claim which defendant eventually wants to file is "not frivolous and that the transcript is needed to decide the issue[s] presented by" such a claim.  See 28 U.S.C. § 753(f).  The mere bald assertion of "actual innocence," with no supporting factual allegations does not satisfy section 753(f).  See Sistrunk, 992 F.2d at 259 (affirming denial of transcript request under § 753(f) where petitioner made only conclusory allegations that he was denied ineffective assistance of counsel); see also United States v. Falu-Mendoza, 2007 WL 2239403, at *1 (S.D.Cal. Aug. 3, 2007) (denying motion for sentencing hearing transcripts due to the "limited information provided in Defendant's motion[,]" so that "Court [could] not determine whether his [§ 2255] petition w[ould] be frivolous or whether a transcript w[ould] be needed to decide the issues presented [there]in[]"); and Morgan v. Doran, 2007 WL 1080580, at *2 (E.D.Cal. April 4, 2007) (denying request for preparation of transcripts at government's expense where motion "provide[d] insufficient information . . . to determine whether . . . case [wa]s one in which limited government resources should be spent on the preparation of transcripts[,]" and where plaintiff "merely list[ed] all proceedings in . . . case" and did not

- 10 -

identify "specific issues he wishe[d] to appeal").

Finally, even if defendant Soto-Valdez had met section 753(f)'s standards, still, he would not be entitled to access to the court's file under that section because his request is premature. "The vast majority of courts," have interpreted section 753(f) "to mean that, until a prisoner actually brings a proceeding under section 2255, he is not entitled under § 753(f) to have costs for creating or copying such transcripts or other documents paid by the United States." United States v. Lucatero, 2007 WL 1747077, at *1 (E.D.Cal. June 18, 2007) (citations omitted); accord United States v. Connors, 904 F.2d 535, 536 (9th Cir. 1990) (citation omitted) (indigent prisoner who had not filed a habeas petition, was not entitled to copies of his trial transcript at government expense under 28 U.S.C. 2250 until the filing of such a petition).

In the present case, defendant is apparently contemplating bringing a section 2255 motion in the future based upon an asserted claim of actual innocence. Under these circumstances, his constitutional right of access to the courts is not implicated. See Hansen v. United States, 956 F.2d 245, 248 (11th Cir. 1992) (prisoner's right of access to court files of underlying criminal proceedings does not "extend[] to access to the records for the purpose of *preparing* a collateral attack on a conviction[;] . . . a request by a prisoner for access to the court files of his underlying criminal conviction is premature prior to the filing of a collateral attack on that conviction[]"). The court is keenly aware that at least the Fourth Circuit has "ruled that under special circumstances it is permissible to consider a motion for free transcripts prior to the filing of a § 2255 petition, if

1 necessary for use therein." Lucatero, 2007 WL 174077, at *2
2 (citing United States v. Shoaf, 341 F.2d 832 (4th Cir. 1964)).  As
3 did the court in Lucatero, "this court is unwilling to circumvent
4 the clear language of § 735(f) to promote a policy which would
5 encourage fishing expeditions and other possible abuses."  See id.
6 This rationale is all the more compelling where, as here, defendant
7 has already filed one section 2255 motion.

### *Conclusion*

9    For the reasons set forth herein, IT IS ORDERED that defendant
10 Castulo Soto-Valdez's "Request to be Provided with Access to
11 Information Contained in the Preexisting Original Records Contained
12 in the Files of the United States District Court" (doc. 1310) is
13 DENIED.
14    DATED this 11th day of May, 2009.

_____
Robert C. Broomfield
Senior United States District Judge

23 Copies to counsel of record and defendant *pro se*